[Filed October 28, 1886.]

ROBERT BALFOUR ET AL. v. G. H. DAVIS ET AL.

USURY — PLEADING.—An allegation in an answer that the note in suit was in fact payable in this state, but on the face thereof was made payable in California for the purpose of evading the usury laws of Oregon, is defective, in not alleging an agreement between the parties at the time to make said note so payable for a fraudulent or wrongful purpose. Such allegation is not a fact but a conclusion.

SAME—FOREIGN LAW—PRESUMPTION.—A party relying upon the law of another state must plead it, and then allege such facts as brings the case within the law. In such case, we do not presume the laws of another state are like our own.

USURY—WHAT NECESSARY TO CONSTITUTE.—To constitute usury, there must be (1) a loan, express or implied ; (2) an understanding between the parties that the money shall be returned; (3) that a greater rate of interest than is allowed by law shall be paid or agreed to be paid; and (4) a corrupt intent to take more than the legal rate for the use of the sum loaned.

CONTRACT—ATTORNEY'S FEES.—A stipulation in a mortgage for the payment, in case of suit, of twenty per cent. on the amount due as attorney's fees, whether judgment should be recovered or not, is in violation of the rule of just compensation, and contrary to public policy. Nor will the court in such a case allow a reasonable attorney's fee.

MULTNOMAH COUNTY. Defendants appeal. Modified.

*W. T. Burney* and *J. V. Beach*, for Appellants.

*E. C. Bronaugh,* for Respondents.

STRAHAN, J.—This is a suit to foreclose a mortgage on certain real property in Multnomah County. The mortgage was made to secure a promissory note, dated November 29th, 1882, which note was due two years after date, and was made payable at the City of San Francisco, California, and provided for the payment of interest half yearly, on the first days of June and December of each year; and if the interest was not paid when due, to be compounded by being added to the principal and becoming a part thereof. The rate of interest specified in the note was nine per cent. The mortgage provided in substance that said G. H. Davis should pay as soon as due all taxes, assessments, and incumbrances whatsoever which may be and appear to be a lien upon the mortgaged property or any part thereof, and will keep the buildings erected thereon insured against fire to the amount required by the plaintiffs or their assignee, in gold coin, in such insurance companies as shall be specified by the plaintiffs; and that if such taxes, assessments, or incumbrances be not so paid, or such buildings so insured and the policies so assigned, then the plaintiffs may pay such taxes, assessments, or incumbrances, and be sole judge of the legality thereof, or may obtain such insurance in their own name as mortgagees; and all taxes paid therefor shall be secured by said mortgage, and shall be paid by said G. H. Davis on demand, and shall bear interest from the date of the payment at the rate of ten per cent. per annum, and be compounded monthly until paid; and that any default in repayment of such sums when demanded should, at the option of plaintiffs, render said whole mortgage immediately due and payable. The mortgage further provides in substance that, in case any action should be brought to foreclose said mortgage, counsel fees at the rate of twenty per cent. upon the amount due should be allowed and paid, whether judgment be recovered or not; as also such sum as may have been paid for searching the title of the mortgaged property since the date of the record of said mortgage.

The main questions presented for our consideration arise upon the answers of the defendants, W. T. Burney and others, and the separate answer of the defendant G. H. Davis. The answer of Burney and others is substantially as follows:

"That defendant G. H. Davis executed and delivered to Burney his two certain promissory notes on the first day of November, 1883, for the payment of five hundred dollars each, within one year, with interest at ten per cent. per annum from date, and reasonable attorney's fee, if collected by suit or action; and also his certain second mortgage on the same land as respondents' mortgage, to secure the payment of said notes.

" That appellant Burney's notes and mortgage were assigned to said bank on the first of March, 1885, as collateral security for the loan of $800, and interest at ten per cent. per annum, on note endorsed by defendants A. J. Knott and H. Clay Meyers, which had not been paid. These defendants, further answering herein, deny that they have any knowledge or information sufficient to form a belief whether said sum has been paid to plaintiffs or not, or as to whether plaintiffs have paid the sum of $12.48, or any sum, on the 29th day of March, 1884, or at any time; or the sum of $14.08, or any sum, on the 23d day of May, 1885, or at any time; or any sum as road tax on the 17th day of July, 1885; or whether plaintiffs have paid any sum at any time, as taxes or otherwise."

The separate answer of the defendant Davis is as follows:

Admits the execution and delivery of the note and mortgage alleged in complaint; but denied that said note was to be paid in the State of California, or elsewhere than in the State of Oregon; and alleges as to that fact, that said note was made payable upon the face thereof in said state for the purpose of fraudulently evading the usury laws of the State of Oregon, where this defendant resides, and where plaintiffs' business is carried on. And this defendant further alleges that said note was executed and delivered to the plaintiffs upon the following usurious agreement, to wit: " That plaintiff would loan to the defendant the sum of $1,200 on

XIV. OREG.—4.

the 29th day of November, 1882, to be paid in two years, with interest thereon at the rate of nine per cent. per annum, payable half-yearly on the first day of June and December ; and in default thereof the same to become compounded by adding the amount of said interest, and the whole thereafter drawing interest as principal ; and the further sum of all taxes assessable in Oregon upon the mortgage securing said note, and upon the debt thereby secured, which taxes aggregate the sum of two per cent. per annum ; said taxes to be paid to plaintiffs on or before the 1st day of March of each year.

" That said amounts were to be paid, and the further sum of $25.75 was retained by plaintiffs of said sum of $1,200, *as interest* upon said loan, and not otherwise; and that the aggregate of all said sums amounts to a higher and greater rate of interest than ten per cent. per annum upon the said loan, that being the highest rate of interest by the laws of Oregon allowed to be contracted for; and all said sums were contracted to be paid for the use of said sum so to be loaned plaintiffs by defendant, pursuant to the agreement upon which said note was executed.

" Defendant further answering herein, alleges that said mortgage referred to in the second amended complaint herein was made, executed, and delivered upon the following usurious contract, to wit :

" That the same was made, executed and delivered for the purpose of securing the payment of said note pursuant to its terms, and the said sums therein provided for to the plaintiffs, and thereby plaintiffs contracted to receive, and this defendant to pay, as interest, and for the use of said sum of $1,200, the following sums, viz: Nine per cent. per annum upon $1,200, payable half yearly upon the 1st day of June and December, and in default of the payment when due, then said interest to be compounded by being added to the principal and thereafter drawing the same rate of interest as principal; also the sum of all taxes assessable in Oregon upon the said mortgage, and upon the debt thereby secured, and all taxes, assessments and incumbrances whatsoever, which may be or appear to be liens

on the property described in said mortgage or any part thereof; and if said taxes, assessments or incumbrances be not so paid, then the plaintiffs should pay the same, and be the sole judge of the legality thereof; and all sums paid therefor should be secured by said mortgage, and paid by this defendant on demand, and if not so paid, bear interest from date of payment by plaintiffs at the rate of ten per cent. per annum, and to be compounded monthly until repaid; also the further sum of $25.75 retained by the plaintiffs. That the sums so contracted to be paid for taxes as aforesaid amounted to more than two per cent. per annum, and that all of said sums payable as aforesaid as interest and for the use and in consideration of said loan of said sum, is and'was a usurious agreement upon the part of this defendant to pay, and the plaintiffs to receive, a higher rate of interest for said money than ten per cent. per annum, that being the greatest sum then allowed by the laws of Oregon.

" The defendant denied the said conveyance was executed for, or intended to be or was, a mortgage or lien upon said premises, for any purpose other than to secure the payment of said sum of $1,200, pursuant to the terms and conditions of said note.

" This defendant further answering herein alleges that said promise to pay by him to the plaintiffs said sum, as provided in said mortgage, as attorney's fees, is and was without any consideration, other than the loan of said sum, and that the amount is greatly in excess of the reasonable value specified and required, and was inserted therein as a penalty, and is unconscionable and void, and does not constitute a lien upon said premises."

To this answer of Davis setting up new matter, the plaintiff demurred, for the reason that it did not contain facts sufficient to constitute a defense; which demurrer was sustained by the court, and a final decree entered foreclosing said mortgage.

The first question presented for our consideration is the propriety of the ruling of the court below, in sustaining the de-

murrer to the new matter in the separate answer of defendant Davis.

The allegation in the answer, as to the purpose of making the note payable at San Francisco, is subject to two objections :

(1.) The answer does not allege an agreement or understanding between the parties at the time, to make said note payable at San Francisco for any fraudulent or wrongful purposes, and the naked statement that it was so made is a conclusion not warranted by any issuable fact alleged.

(2.) If it was the design of the pleader to rely upon the usury laws of the State of California, he should have pleaded the statute of that state, and then alleged such facts as brought the case within the law. In such case, we do not presume the laws of another state are like our own. (Tyler on Usury, 459, and authorities there cited.) But assuming the contract in question was to be executed in Oregon, is there enough alleged to present the question of usury ? Tyler on Usury states the requisites of a usurious contract thus : " Thus it appears that in order to constitute usury there must be (1) a loan, express or implied ; (2) an understanding between the parties that the money lent shall or may be returned ; (3) that for such loan a greater rate of interest than is allowed by law shall be paid, or agreed to be paid, as the case may be ; and (4) a corrupt intent to take more than the legal rate for the use of the sum loaned. Unless these four things concur in every transaction, it is safe to affirm that no case of usury can be declared, and this may be regarded as a rule universally recognized in all of the states." Tyler on Usury, 110. Applying these rules to the pleadings in question, its insufficiency is manifest, and the court did not err in sustaining said demurrer.

Objection is made by the appellants to the allowing of $200 as attorney's fees in this suit for foreclosing the mortgage. That allowance was based on a provision in the mortgage providing for counsel fees of twenty per cent. on the amount due in case of a suit, whether judgment should be recovered or not. In *Peyser* v. *Cole*, 11 Or. 39, this court considered the

question of attorney's fees arising on contracts providing for reasonable attorney's fees, and sustained their legality; but we do not feel disposed to extend the doctrine there announced beyond the precise question then before the court. But the question there considered does not exclude the one at bar. We are, therefore, at liberty to consider it, uninfluenced by anything that was said in that case.

The Supreme Court of Michigan has stated the law applicable to this class of cases, thus: "So parties contracting are not permitted to stipulate and fix the measure of damages that shall be recovered in case of a breach of the contract grossly in excess of what the damages should actually appear to be. Just compensation for the injury sustained is the principle at which the law aims, and the parties will not be permitted, by express stipulation, to set this principle aside. (*Jaquith* v. *Hudson*, 5 Mich. 123.) * * * To permit the parties to agree upon any attorney's fee they should think proper to insert in a mortgage, payable in full, whether much or little should be done towards the foreclosure thereof, would be in violation of the rule of just compensation, and contrary to well settled principles of public policy. Parties may make and carry out any agreement they please, which does not affect the public or the rights of third persons; but in case of dispute they must not expect the courts to enforce any unconscionable bargain they may have thought proper to make.

If a creditor can insert such a provision in a mortgage, and enforce performance thereof, why not insert a clause, that if the debt is not paid at maturity, for every letter he shall write to his debtor demanding the payment, and for every time he shall call on his debtor to demand payment, he shall receive a definite, fixed sum?" (*Myer* v. *Hart*, 40 Mich. 517.)

Counsel for the respondents suggested upon the argument that if the court deemed the amount specified in the mortgage as attorney's fees to be unjust or unreasonable, that the same might be reduced to such sum as we might think, under all the circumstances, would be proper. This, in effect, is asking the court to make a contract for the parties that they have not

made for themselves, and which we do not consider we are authorized to do. We must either enforce this contract as it appears, as to this item, or decline to enforce it. No allowance will, therefore, be made in favor of the plaintiffs for attorney's fees in this suit.

Appellants' counsel object to the items of $12.48, and $14.08 alleged by the plaintiffs to have been paid by them as taxes; but the payments are denied in the answer of appellants, and no proof having been offered on the subject, these items cannot be allowed.

We have carefully considered *Burns* v. *Scoggin*, 9 Sawy. 73, and *Daly* v. *Maitland*, 88 Pa. St., 384, referred to by respondents' counsel, but we cannot assent to the doctrine therein announced touching a contract like the one now before the court. Of course, we are aware that the authorities on the subject are irreconcilable, and we might find authority for almost any view we might think proper to adopt. *Peyser* v. *Cole*, *supra*, has gone as far on the subject of allowing attorney's fees as is consistent with our views of the best considered cases.

The decree of the court below will, therefore, be modified here, so as to disallow the two items claimed for taxes; also the $200 claimed by plaintiffs as attorney's fees; the mortgages mentioned in the pleadings will be severally foreclosed, and the usual decree entered for that purpose; the plaintiffs to recover $1,200 and interest, as claimed, and the First National Bank of East Portland and W. T. Burney the amounts claimed in the separate answer, to be paid from the proceeds of the sale after the payment of the amount due plaintiffs; and that the appellants recover costs.

All concur.